NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
PENNSYLVANIA GENERAL                          :
INSURANCE COMPANY f/k/a                        :
GENERAL ACCIDENT INSURANCE                     :
COMPANY, and GENERAL ACCIDENT                  :
INSURANCE COMPANY OF AMERICA     :     Civil Action No. 11-0978 (JAP)
n/k/a ONEBEACON INSURANCE                      :
COMPANY,                                       :
                                               :
                    Plaintiffs,               :     **OPINION**
        v.                                     :
                                               :
MENK CORPORATION and EDELE        :
HOVNANIAN,                                     :
                                               :
                    Defendants.               :
_____  :

PISANO, District Judge.

Plaintiffs Pennsylvania General Insurance Company f/k/a General Accident Insurance
Company and General Accident Insurance Company of America n/k/a OneBeacon Insurance
Company (collectively, "Plaintiffs") bring this action seeking a declaration that they have no
duty to indemnify or further defend Defendants Menk Corporation ("Menk") and Adele
Hovnanian ("Hovnanian") (collectively, "Defendants") in an underlying construction defect
action currently pending in the Superior Court of New Jersey.  Presently before the Court is
Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and
Defendants' cross-motion to stay this action.  For the reasons below, the Court will grant
Plaintiffs' motion and deny Defendants' cross-motion.

## I.    BACKGROUND

The instant declaratory judgment action is rooted in a case currently pending in the

Superior Court of New Jersey, Ocean County.  That case—bearing Docket No. L-23-04—was

filed by the Saratoga at Toms River Condominium Association, Inc. ("the Association") and

names both Menk and Hovnanian as defendants.  Saratoga Compl.  The Association seeks to

recover damages from Menk, Hovnanian[1], and all other parties who participated in the sale,

development, design, construction and management of the Saratoga at Toms River ("the

Saratoga"), a condominium townhouse development located in Toms River, New Jersey.  *Id.* ¶ 1.

As the primary basis for liability in that action, the Association alleges various

deficiencies in the design and construction of the common elements at the Saratoga, including:

> (a) Improper construction of roofs and improper installation of roofing
> Materials and their interface with siding materials including, but not
> limited to, improper or missing flashings and improper installation of
> gutters and leaders;
> (b) Improper and/or deficient construction of roads, sidewalks and
> driveways;
> (c) Failure to construct grading and drainage systems in accordance
> with approved plans and standards in the industry;
> (d) Improper and/or deficient construction of basement foundation
> walls;
> (e) Improper installation of or missing flashings, sealant and caulking;
> and,
> (f) Improper and/or deficient installation of, or missing, roof water
> management systems, including, but not limited to, inadequate or missing
> gutters, leaders and downspouts.

*Id.* ¶ 30.  The Association asserts that those deficiencies caused damage to the common elements

and units at the Saratoga.  *Id.* ¶ 31.  As alleged, all of the design and construction at the Saratoga,

including a majority of the units and all common elements, was performed by Menk or by

subcontractors working under Menk's direct supervision and control.  *Id.* ¶¶ 18, 23.

---

[1] Defendant Hovnanian is identified as a member of the condominium Board of Trustees prior to a transition of control to the unit owners.  *Id.* ¶ 4.

In the second amended complaint—the operative pleading in the underlying action—the Association asserts numerous causes of action, including allegations of Consumer Fraud Act violations, negligence, breach of fiduciary duties, breach of express and implied warranties, negligent misrepresentation, breach of contract, fraudulent inducement, violation of the New Jersey Law Against Discrimination, and various violations under the Planned Real Estate Development Full Disclosure Act. *Id.* ¶¶ 39-129. As insurers of Menk and Hovnanian, Plaintiffs have been contributing towards the defense in that action pursuant to a reservation of rights letter and defense agreement. Pl. 56.1 Stmt. ¶ 19.

Relevant to the instant declaratory judgment action before this Court, Plaintiffs issued Menk and Hovnanian Commercial General Liability Policies that became effective in 1999. *Id.* ¶ 15. The Policies provide that Plaintiffs have a right and duty to defend Menk and Hovnanian against any suit seeking damages because of "bodily injury" or "property damage" to which the insurance applies. DE 10-5, Ex. B, Part 2, at 25. As defined, the insurance applies only to "bodily injury" or "property damage" that is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. *Id.* The Policies contain two different definitions of "property damage": (1) "physical injury to tangible property, including all resulting loss of use of that property"; and (2) loss of use of tangible property that is not physically injured." *Id.* at 34. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

On February 23, 2011, Plaintiffs filed the instant declaratory judgment action. In their motion for summary judgment presently before the Court, Plaintiffs assert that they have no duty to defend or indemnify Defendants in the underlying state court action because none of the claims asserted by the Association amount to covered "occurrences" within the meaning of the

insurance policies.  Specifically, they contend that the Association only seeks recovery for alleged damage to the Saratoga itself—which Plaintiff defines as Defendants' "work product"—and set forth allegations that relate only to faulty workmanship by or on behalf of Defendants.

In opposition to Plaintiffs' motion, Defendants assert that discovery in the underlying action has revealed that the Association's claims include allegations of damage to third party property that trigger coverage under the policies.  In that regard, they assert that the Association's expert report contains allegations that homeowner property was damaged, including windows, front and rear stairs, chimneys and fireplaces at the complex, and that deposition testimony has included allegations of damage to individual unit owners' carpets and artwork.  Additionally, Defendants cross-move to stay this matter pending completion of discovery in the underlying state court action.

## II.    STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986*)*.  In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997).  The Court is not to "weigh the evidence and determine the truth of the matter," but instead need only determine whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once that showing has been made, the burden then shifts to the non-moving party to identify, by affidavits or otherwise, specific facts showing the existence of a genuine issue for trial. *Id.* at 324. The non-moving party may not rest upon the mere allegations or denials of its pleadings, *id.*, and must offer admissible evidence establishing a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matushita*, 475 U.S. at 586.

## III.   DISCUSSION

### A. Duty to Defend

An insurer is contractually obligated to provide the insured with a defense against all actions covered by the relevant insurance policy. *Abouzaid v. Mansard Gardens Assoc., LLC,* 207 N.J. 67, 79 (2011). In determining whether the duty to defend has been triggered, the Court must compare the allegations in the underlying complaint against the language of the insurance policy. *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173 (1992). If the two correspond, then "the duty to defend arises, irrespective of the claim's actual merit."[2] *Id.*; *see also Abouzaid*, 207 N.J. at 79-80 (if "the complaint comprehends an injury which may be within the policy," a duty to defend will be found). The Court's analysis is not "necessarily limited to the facts asserted in the complaint," *Abouzaid*, 207 N.J. at 81, however, and the duty to defend may also be triggered by "extrinsic facts, outside the complaint, which are later revealed in discovery." *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 407 N.J. Super. 177, 192 (App. Div. 2009) (citing *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 198-99 (1992)). Although

---

[2] Thus, the duty to defend is broader than the duty to indemnify—a similar, but related duty of the insurer. *Rosario v. Haywood*, 351 N.J. Super. 521, 534 (App. Div. 2002).

doubts as to the underlying allegations should be resolved in favor of coverage, *see Sahli v. Woodbine Bd. of Educ.*, 193 N.J. 309, 322 (2008), a court may not "write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529 (1989).

B. <u>*Parkshore*</u>

In their motion for summary judgment, Plaintiffs rely in principal part on the recent decision in *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Parkshore Dev. Corp.*, 2008 WL 4276917 (D.N.J. Sept. 10, 2008), *aff'd*, 403 F. App'x 770 (3d Cir. 2010). In *Parkshore*, Pennsylvania National Mutual Casual Insurance Company ("Penn National") filed suit in District Court seeking a declaration that it bore no further duty to defend or indemnify its insured, Parkshore Development Corporation ("PDC"), in connection with an underlying state court action. *Id.*, at *1. In that action, a condominium association sought damages for alleged construction deficiencies from PDC, the developer and general contractor of a condominium development in Linwood, New Jersey. *Id.* Specifically, the association alleged that stucco around some of the windows at the condominium had not been caulked properly, leading to various forms of water damage, including wet crawl spaces, water infiltration of the walls, and other structural damage to the common elements of the condominiums. *Id.* The association's expert also detailed further deficiencies in the roofing, siding, window installation, wood trim and irrigation that caused damage to the framing, windows, casings and stucco finish. *Parkshore*, 403 F. App'x at 771. All of the work and construction at the development had been performed by subcontractors. *Parkshore*, 2008 WL 4276917, at *1. The association advanced claims for breach of contract, negligence, breach of implied warranties, consumer fraud, and failure of remediation. *Id.*

In support of its motion for summary judgment filed in District Court, Penn National argued that coverage under its commercial general liability policy was not triggered because there was no "occurrence" within the meaning of the policy.[3]  *Id.*, at *2.  According to Penn National, the condominium association's allegations all related to faulty workmanship by or on behalf of Parkshore, and faulty workmanship by the insured does not constitute an "occurrence" under the policy.  *Id.*, at *4.

The District Court, after noting that the New Jersey Supreme Court had not yet ruled on whether faulty workmanship can constitute an "occurrence" under a commercial general liability policy, granted Penn National's motion for summary judgment and found that there was no "occurrence" under the meaning of the policy.  *Id.*  It determined that the damage at issue was limited to PDC's work product—which it defined as the condominiums—and held that, "[g]iven the existing case law in New Jersey . . . there is no 'occurrence' where faulty work leads to damage to work product of the insured."  *Id.*, at *4-5.   The Third Circuit affirmed the District Court's decision, holding that, "[w]hile other courts have permitted an 'occurrence' where faulty construction damages only the insured's own work, New Jersey courts foreclose such a possibility."  403 F. App'x at 772, n.3 (noting that, although subcontractors did all of the work at the condominium project, the whole project was nonetheless PDC's because it was the general contractor).[4]

---

[3] The relevant policies issued to PDC contained two slightly different definitions of both "occurrence" and "property damage."  *Id.*, at *1-2.  The latter definitions for each are identical to the definitions of "occurrence" and "property damage" in the policies at issue in the instant case.  *Id.*

[4] The Third Circuit also addressed the application and significance of the New Jersey Supreme Court's decision in *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233 (1979).  *See Parkshore*, 403 F. App'x at 772.  It concluded that, although the *Weedo* decision "does distinguish between the business risk of repairing a defect and the risk of faulty workmanship that causes consequential damage," it "does not determine the existence of an 'occurrence' where faulty workmanship causes damage to the completed project *itself*."  *Id.* (emphasis added).   The District Court reached the same conclusion in denying PDC's motion for reconsideration.  *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Parkshore Dev. Corp.*, 2009 WL 1737032, at *2 (D.N.J. June 17, 2009) (concluding that the *Weedo* decision "was based on an interpretation of exclusions in the policy, not on the definition of occurrence," and further explaining

Here, as an initial matter, Defendants attempt to discredit *Parkshore* by noting that it was an unpublished decision and designated as non-precedential by the Third Circuit.  Although Defendants are correct in that regard, the Court nevertheless finds *Parkshore* highly persuasive and well-reasoned.  The facts and issues presented in *Parkshore* are closely analogous to those of the instant action.  Moreover, the reasoning underlying the *Parkshore* decision was based upon a cogent analysis of relevant, developed case law in New Jersey.  Specifically, critical to the reasoning of both the District Court and Third Circuit in *Parkshore* was a distinction drawn by the Appellate Division of the New Jersey Superior Court in two of its prior decisions.

In the more recent decision, *Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co.*, 387 N.J. Super. 434, 447-50 (App. Div. 2006), the Appellate Division held that faulty workmanship—whether performed by a contractor or subcontractor—which causes damage to the general contractor's work is not an "occurrence" under a commercial general liability policy. By contrast, in *S.N. Golden Estates, Inc. v. Continental Casualty Co.*, 293 N.J. Super. 395 (App. Div. 1996), the Appellate Division held that faulty workmanship which causes damage to property *other* than the work product of the insured does constitute an "occurrence."  *See S.N. Golden Estates, Inc.,* 293 N.J. Super. at 401 (insured's faulty construction of septic systems caused damage to neighbor's homes).  Thus, the holding in *Parkshore* that there is no "occurrence" where faulty construction damages only the insured's own work was based upon a proper synthesis and analysis of pertinent New Jersey case law.  *See Parkshore*, 2008 WL 4276917, at *4 (the "the majority of courts that have addressed the issue" of whether faulty

---

that, to the extent the decision could be interpreted to address the definition of occurrence, it actually supported the granting of summary judgment for Penn National).

workmanship is an "occurrence" under a commercial general liability policy have found that it is not, "including the Appellate Division of the Superior Court of New Jersey").[5]

Consistent with *Parkshore*'s holding and the state court decisions it rests upon, the Court finds that Plaintiffs owe no further duty to defend Menk and Hovnanian in the underlying state court action. As noted above, the allegations in that action are closely analogous to those in *Parkshore*. Indeed, just as in *Parkshore*, the Association's claims all relate to faulty workmanship by or on behalf of Defendants, and the Association does not allege damage to any property other than Defendants' work product—specifically, all of the design and construction at the Saratoga. *See, e.g.* Saratoga Compl. ¶¶ 18, 23, 30; *Parkshore*, 403 F. App'x at 2, n.3 (defining developer's work product as the entire condominium project even though all of the work was done by subcontractors). Thus, because "there is no 'occurrence' where faulty work leads to damage to work product of the insured," Plaintiffs have no further duty to defend Menk or Hovnanian in the underlying state court action. *Parkshore*, 2008 WL 4276917, at *4-5, *aff'd*, 403 F. App'x at 772.

In reaching this determination, the Court finds unavailing Defendants' argument that discovery in the state court action has revealed allegations of damage to third party property. Although they identify an expert report that allegedly contains claims of homeowner property damage, and deposition testimony that allegedly includes reports of damage to carpets and artwork in certain units, Defendants have provided the Court with neither the report nor the deposition transcripts. Instead, they rely on the affidavit of Menk's general counsel—in which he summarizes the alleged contents of the expert report and depositions, *see* Warnken Aff.—and

---

[5] The Court further notes that Defendants' assertion that *Parkshore* is inconsistent with *Dean v. Barrett Homes, Inc.*, 204 N.J. 286 (2010) is entirely misguided. *Dean* arose under New Jersey's Products Liability Act and primarily involved issues of statutory interpretation and the application of the integrated product doctrine and economic loss rule. *See id.* Thus, *Dean* is inapposite in this insurance coverage dispute, and Defendants arguments as to its inconsistency with *Parkshore* are without merit.

a brief Menk filed in Superior Court.  Pursuant to Federal Rule of Civil Procedure 56(c),

however, an affidavit used to oppose a motion for summary judgment must set out facts that

would be admissible in evidence.  *See also* Fed. R. Civ. P. 56(c)(1) (factual assertions must be

supported by "citing to particular parts of materials in the record . . ."). Correspondingly,

"[h]earsay statements that would be inadmissible at trial may not be considered for purposes of

summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

Accordingly, to the extent Defendants' rely on the hearsay affidavit of Menk's general counsel

and their brief filed in state court, that reliance is misplaced.

Moreover, even if Defendants' failure to supplement the record was overlooked, there is

no evidence that the damage allegedly asserted in the expert report has been claimed by the

Association in the underlying action or affirmatively pled against Defendants.[6]  Likewise, with

regard to the deposition testimony, the unit owners are not parties to the underlying action and

there has been no indication that their alleged claims of damage will become part of the

Association's complaint.  In this regard, the Court finds *FileNet Corp. v. Chubb Corp.*, 324 N.J.

Super. 476 (Law Div. 1997) instructive.

In *FileNet*, the court recognized that, although the duty to defend may be triggered by

extrinsic facts outside the complaint, *see W9/PHC Real Estate*, 407 N.J. Super. at 192, it is "not

without limits." *FileNet Corp.*, 324 N.J. Super. at 493.  Indeed, a court's analysis  "does not

permit nor does it require that [it] make a better case or a broader claim than those which might

fairly be said to arise from the evidence," as doing so "would create a nearly unlimited duty to

---

[6] Even if it were, the damage allegedly relates to windows, front and rear stairs, chimneys and fireplaces at the
condominiums—all of which can still be considered part of Defendants' "work product."  *See* Saratoga Compl. ¶¶
18, 23.  As Plaintiffs point out, *Parkshore* did not explicitly distinguish between common elements and homeowner
elements, and instead focused on whether the damage alleged was sustained to the work product of the insured.  *See*
*Parkshore*, 2008 WL 4276917, at *4-5, *aff'd,* 403 F. App'x at 772.

defend." *Id.* at 489.  Thus, the court held, "regardless of whether [plaintiff] might in the future

seek to amend its complaint . . . it has not done so and, significantly, has not attempted to do so

during the extended period of time while this motion was being briefed and has been pending."

*Id.* at 488.

Similarly, in the instant case, the Court finds significant Defendants' failure to proffer

competent evidence demonstrating that the claims being asserted by the Association in the

underlying action involve allegations of damage to property other than Menk's own work

product—particularly in light of the extensive period of discovery in that action and the months

during which the motions in this case have been pending.  Accordingly, just as in *FileNet*, the

Court declines to read the alleged extrinsic facts in the underlying action as indulgently as

Defendants urge, and refuses to find a duty to defend based upon the "mere possibility of

coverage for an as yet unpleaded theory."  *Id.* at 488-89.

## IV.    CONCLUSION

For the reasons above, the Court grants Plaintiffs' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56.  As a result, Defendants' cross-motion to stay

this action is denied as moot.


                                                   /s/ JOEL A. PISANO
                                                   United States District Judge


Dated: November 21, 2011

11